# EXHIBIT 1

ELECTRONICALLY FILED
2/6/2017 5:25 PM
68-CV-2017-900090.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
KAREN DUNN BURKS, CLERK

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BESSEMER DIVISION

| | |
|---|---|
| **BRADLEY OVERSTREET,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NO.:** |
| v. ) | |
| ) | |
| **JEFFERY BRADLEY, individually, and** ) | **JURY TRIAL DEMANDED** |
| **as CEO of FORTERRA, INC.; and** ) | |
| **CHADWICK SUSS, individually, and as** ) | |
| **VP of HUDSON AMERICAS, L.P.,** ) | |
| | |
| **Defendants**. | |

## COMPLAINT

COMES NOW the Plaintiff, BRADLEY OVERSTREET, by and through his undersigned counsel, and for his Complaint against Defendants, JEFFERY BRADLEY, individually, and as CEO of FORTERRA, INC. and CHADWICK SUSS, individually, and as VP of HUDSON AMERICAS, L.P., (hereinafter referred collectively as "Defendants") hereby shows as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter because the actions which form the basis of this Complaint occurred in Jefferson County, Alabama in the Bessemer Cut-Off.

2. This action is brought pursuant to Alabama Common Law and *Alabama Code* § 6-5-100 (1975), *Alabama Code* § 6-5-101 (1975), and *Alabama Code* § 6-5-102 (1975).

## PARTIES

3. Plaintiff, Mr. Bradley Overstreet ("Mr. Overstreet" or "Plaintiff"), is a resident of the State of Alabama, he is over the age of nineteen (19) years, and he is of sound mind.

4. Mr. Jeffery Bradley ("Mr. Bradley") is over the age of nineteen (19) years.

5. Mr. Chadwick Suss ("Mr. Suss") is over the age of nineteen (19) years.

1

6. Forterra Inc. ("Forterra") and Hudson Americas, L.P. ("Hudson") through their wholly owned subsidiary, USP Holdings, Inc. ("U.S. Pipe") do business and are located in Jefferson County, Alabama, at 2023 Saint Louis Avenue, Bessemer, Alabama 35020.

## STATEMENT OF FACTS

7. On or about April 1, 2009, Plaintiff was hired by U.S. Pipe as its Chief Financial Officer ("CFO").

8. U.S. Pipe was sold in or about 2012 to Wynnchurch Capital, LLC ("Wynnchurch").

9. U.S. Pipe was sold by Wynnchurch to Lone Star Funds ("Lone Star") in or about April 15, 2016.

10. Lone Star acquired Forterra in or about 2016.

11. Hudson is a wholly owned subsidiary of Lone Star that manages Lone Star's interest in Foreterra and U.S. Pipe.

12. After learning that Lone Star purchased U.S. Pipe from Wynnchurch, U.S. Pipe's President, Mr. Paul Ciolino ("Mr. Ciolino"), announced that he would resign prior to Lone Star's purchase of U.S. Pipe.

13. In response to Mr. Ciolino's resignation, and in order to secure the employment of top U.S. Pipe executives, Mr. Suss and Mr. Bradley traveled to Birmingham, Alabama less than one (1) week after Mr. Ciolino left U.S. Pipe.

14. Defendants traveled to Birmingham, Alabama, with the knowledge that they would make fraudulent promises to induce Plaintiff and other U.S. Pipe executives into remaining with U.S. Pipe to facilitate Forterra's initial public offering ("IPO").

15. Mr. William Kerfin ("Mr. Kerfin"), who presently serves as Forterra's Water Pipe & Products President, was U.S. Pipe's Vice-President of Sales when Defendants made the trip to Birmingham.

16. On or about April 11, 2016, Defendants met with U.S. Pipe executives to announce the plan to launch an initial public offering (the "IPO") of Forterra with U.S. Pipe as its wholly owned subsidiary.

17. During their time in Birmingham, Alabama, Defendants assured Plaintiff and other U.S. Pipe executives that, despite the merger and IPO, U.S. Pipe would remain the same and operate as a wholly owned subsidiary of Forterra.

18. At that time, Plaintiff was not interested in staying through the IPO, and needed additional incentives to remain with U.S. Pipe.

19. During Defendants' visit, Plaintiff inquired as to whether he would remain the CFO of U.S. Pipe after the IPO.

20. Plaintiff's inquiry was based in part on his understanding that Forterra had a CFO, so he wanted to ensure that Defendants would not terminate his employment after he guided U.S. Pipe through the IPO.

21. In response to Plaintiff's inquiry, both Mr. Suss and Mr. Bradley assured Plaintiff that he would keep his position after the IPO, and there would not be any change with respect to his position after the IPO.

22. Defendants knew that Plaintiff's knowledge, skills, and abilities with respect to U.S. Pipe and its financials were necessary for an expedient and successful IPO.

23. When Defendants made these assurances to Plaintiff, they did so knowing that they would terminate Plaintiff's employment after the IPO.

24. Defendants made said assurances to the Plaintiff to induce him to enter into a contract for employment (the "Agreement").

25. Despite those assurances, Plaintiff remained concerned, and was unwilling to execute the Agreement as initially presented to him on April 13, 2016.

26. To convince Plaintiff that he should sign the agreement, Defendants increased Plaintiff's salary by fifty-thousand and 00/100 dollars ($50,000.00); Defendants also offered Plaintiff an interest of 30,000 units in Lone Star's Long Term Incentive Plan ("LTIP").

27. In order to receive the LTIP units, Defendants required Plaintiff to execute an Award Agreement.

28. While Plaintiff was considering the offer, Defendants provided Plaintiff with a breakdown of the LTIP agreement that indicated he would not forfeit LTIP units if he was terminated "without cause."

29. In addition to the aforementioned statements, Defendants stated that Plaintiff was integral to the IPO, and the continued success of the newly formed public company.

30. Through his experience as a CFO, Plaintiff understood the heavy burden the IPO would place upon him in addition to his normal job responsibilities, so he required an increase in the LTIP units to stay with U.S. Pipe.

31. One (1) day after Plaintiff's request, Defendants increased Plaintiff's interest to 45,000 shares.

32. Consequently, the Defendants increased the value of Plaintiff's interest from upward of three million, four hundred thousand and 00/100 dollars ($3,400,000.00) to upward of five million and 00/100 dollars ($5,000,000.00).

33. The increase in salary and LTIP units were made to induce Plaintiff to sign the Agreement and Award Agreement, and to take on the onerous task of readying U.S. Pipe for the IPO.

34. Plaintiff's involvement was especially important due to Mr. Ciolino's resignation.

35. Relying upon Defendants' promises, Plaintiff signed the Agreement on April 14, 2016, and the Award Agreement for the LTIP units on or about April 29, 2016.

36. Importantly, according to the Award Agreement, for Plaintiff to realize the LTIP payout, a "Liquidity Event" would have to occur while he was employed, or within six (6) months of his termination.

37. The Award Agreement stated the Plaintiff would forfeit LTIP units after six (6) months even if he was terminated without cause, while the handout given to Plaintiff while he was considering whether to stay with U.S. Pipe stated that he would only forfeit LTIP units if he was A) terminated for cause or B) resigned without good reason.

38. Defendants knew that the LTIP units would be forfeited six (6) months after termination, regardless of the reason, when they summarily agreed to increase Plaintiff's LTIP units by fifty-percent (50%) as an inducement to convince him to remain with U.S. Pipe.

39. Defendants also knew a liquidity event would not occur within six (6) months of the IPO, or soon thereafter due to the mandatory one hundred and eighty (180) day hold pursuant to SEC regulation.

40. Defendants planned to fire Plaintiff shortly after the IPO, which meant he would never realize the LTIP payout.

41. Plaintiff prepared U.S. Pipe for the IPO, while managing his day-to-day duties as its CFO.

5

42. On October 25, 2016, Forterra made its IPO.

43. Plaintiff was terminated, by Forterra, without cause effective November 7, 2016.

44. Due to SEC regulations, Plaintiff will not realize any payment from his LTIP units.

45. Plaintiff's forfeiture of his LTIP units increased Mr. Bradley's potential personal gain from a Liquidity Event by approximately two million and 00/100 dollars ($2,000,000.00).

## COUNT ONE – FRAUDULENT SUPPRESSION

46. Plaintiff re-alleges and incorporates the preceding paragraphs and subsequent factual averments of this Complaint as if fully set forth herein.

47. Defendants had a duty to disclose their intention to terminate Plaintiff following Forterra's IPO.

48. Defendants induced Plaintiff, to his detriment, to stay with U.S. Pipe through the IPO, and to execute the Award Agreement in the present form.

49. In exchange for Plaintiff's agreement, the Defendants made lucrative guarantees to Plaintiff, which the Defendants knew Plaintiff would never realize.

50. That is, Defendants suppressed from Plaintiff the fact that he would be terminated shortly after the IPO and that this was Defendants' plan all along, despite assurances to the contrary, thereby divesting him of the benefit of his bargain with Defendants.

51. It was Mr. Bradley's plan from the beginning, to use Plaintiff to ensure a successful IPO, and then terminated Plaintiff before he had an opportunity to receive payment from his LTIP units.

52. Plaintiff's LTIP forfeiture results in Mr. Bradley's significant financial gain.

53. Plaintiff would not have continued employment with U.S. Pipe, agreed to the terms of the Agreement, or agreed to the terms of the Award Agreement if Defendants would have disclosed its intention to terminate Plaintiff following the IPO.

54. Plaintiff was terminated "without cause" effective November 7, 2016.

55. Plaintiff has been damaged due to Defendant's fraudulent conduct.

## COUNT TWO – FRAUDULENT MISREPRESENTATION

56. Plaintiff re-alleges and incorporates the preceding paragraphs and subsequent factual averments of this Complaint as if fully set forth herein.

57. Defendants misrepresented to Plaintiff that he would be needed after the IPO even though Forterra had its own CFO.

58. Defendants guaranteed Plaintiff that, if he signed the Employment Agreement and the Award Agreement, and committed to getting Forterra through the IPO, he would remain employed as CFO of U.S. Pipe.

59. Defendants knew when the financial and continued employment guarantees were made to Plaintiff that Plaintiff would not be U.S Pipe's CFO following the IPO.

60. Plaintiff was terminated without cause effective November 7, 2016.

61. Plaintiff was damaged by Defendant's fraudulent conduct.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff prays for judgment against Forterra and its CEO, Mr. Bradley, and Hudson and its Vice-President, Mr. Suss, jointly and severally, for an amount which will fairly and adequately compensate Plaintiff for damages sustained, back pay and front pay, a sufficient amount to punish the Defendants for their intentional and reckless acts committed against Plaintiff, together with pre-judgment and post judgment interest, attorneys' fees, all costs and expenses of

the proceeding, "special damages" and any equitable relief to be awarded by the Court. Further, Plaintiff requests that the jury render a verdict for Plaintiff and against the Defendants, jointly and severally, in an amount of not less than six million and 00/100 Dollars ($6,000,000.00).

Respectfully Submitted,

/s/ Anthony D. Michel
Anthony D. Michel (MIC015)
Joshua A. Wrady (WRA002)
*Attorneys for Bradley Overstreet*

**WRADY & MICHEL, LLC**
505 20th Street North
Suite 1650
Birmingham, AL 35203
P: (205) 980-5700
F: (205) 994-2819
Anthony@wmalabamalaw.com
Joshua@wmalabamalaw.com

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.

**DEFENDANT TO BE SERVED COMPLAINT VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

FORTERRA, INC.
r/a CSC LAWYERS INCORPORATING SRV INC.
150 S Perry Street
Montgomery, AL 36104

8